**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
Pittsburgh Division**

|  |  |
|---|---|
| ASHLEY POPA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>PSP GROUP, LLC d/b/a PET SUPPLIES PLUS and MICROSOFT CORPORATION,<br><br>    Defendants. | Civil Action No. 2:22-cv-01357-NR |

**MICROSOFT CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO TRANSFER**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    I.    Ms. Popa and her attorneys are litigating several related actions in the Western District of Washington involving Microsoft's Clarity software. ...................................................................................................... 2

    II.    Ms. Popa's claims in this action relate to the Microsoft Clarity software. ........................................................................................................ 4

ARGUMENT ...................................................................................................................... 6

    I.    The Court should transfer this case to the United States District Court for the Western District of Washington under Section 1404(a). .................................................................................................... 6

            A.    Ms. Popa could have filed this action in the Western District of Washington. ...................................................... 7

            B.    The balance of private and public factors weighs in favor of transferring Ms. Popa's claims to the Western District of Washington. .............................................................. 8

    II.    The Court should transfer this case to the Western District of Washington under the first-filed rule. ............................................... 13

            A.    Both actions involve substantially the same parties. .......................... 15

            B.    Both actions involve substantially the same issues. ............................ 16

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Zillow,*
  Case No. 2:22-cv-01737 (W.D. Wash., filed Sept. 27, 2022) ....................................................4

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Of Tex.,*
  571 U.S. 49 (2013) .........................................................................................................................7

*Bolton v. Tesoro Petroleum Corp.,*
  549 F. Supp. 1312 (E.D. Pa. 1982) ..............................................................................................6

*Commonwealth v. Smith,*
  2016 Pa. Super. 43, 136 A.3d 170 (2016) ....................................................................................5

*Conlisk v. Zillow,*
  Case No. 22-0cv-01698-JCC (W.D. Wash., filed Sept. 19, 2022) .............................................4

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014) .......................................................................................................................7

*Delta Air Lines, Inc. v. Chimet,* S.p.A.,
  619 F.3d 288 (3d Cir. 2010) ........................................................................................................12

*Doe v. Ritz Carlton Hotel Co.,*
  666 F. App'x 180 (3d Cir. 2016) .................................................................................................12

*Eagle View Techs., Inc. v. GAF Materials, LLC,*
  594 F. Supp. 3d 613 (D.N.J. 2022) ...............................................................................................9

*EEOC v. Univ. of Pennsylvania,*
  850 F.2d 969 (3d Cir.) .................................................................................................................14

*Emps.' Ret. Sys. of City of St. Petersburg, Fla. v. Teva Pharm. Indus. Ltd.,*
  2019 WL 5485549 (E.D. Pa. Oct. 8, 2019) .................................................................................14

*Foster v. Maiorana,*
  2014 WL 6633365 (M.D. Pa. Nov. 21, 2014) ..............................................................................8

*Grider v. Keystone Health Plan Cent, Inc.,*
  500 F. 3d 322 (3d Cir. 2007) .......................................................................................................14

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501 (1947) ...................................................................................................................6, 8

*Heyman v. Lincoln Nat'l Life Ins. Co.*,
  781 F. App'x 463 (6th Cir. 2019) ........................................................18

*Huber v. Zillow*,
  Case. No. 22-cv-01699-JHC (W.D. Wash., filed Sept. 7, 2022) ..........................................4, 10

*IMO Indus., Inc. v. Kiekert AG*,
  155 F.3d 254 (3d Cir. 1998)................................................................8

*Jacobowitz v. Range Res. Corp.*,
  2021 WL 2457545 (W.D. Pa., June 16, 2021)...........................................6

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995)..........................................................8, 9, 11, 12

*Kauffman v. Zillow*,
  Case No. 22-cv-01694-JLR (W.D. Wash., filed Sept. 15, 2022)...........................................4

*Keating Fibre Int'l, Inc. v. Weyerhaeuser Co.*,
  416 F. Supp. 2d 1048 (E.D. Pa. 2006) ..................................................13

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
  330 U.S. 518 (1947)......................................................................12

*Kwok Sze v. Fui-Ling Pang*,
  2015 WL 224692 (M.D. Pa. Jan. 15, 2015) ............................................12

*L. Sch. Admission Council, Inc. v. Tatro*,
  153 F. Supp. 3d 714 (E.D. Pa. 2015) ...............................................14, 15

*Mahmoud v. Rite Aid Corp.*,
  2012 WL 3560645 (D.N.J. Aug. 16, 2012) ...................................15, 17, 18

*Margulis v. Zillow*,
  Case No. 2:22-cv-01736 (W.D. Wash., filed Sept. 7, 2022) .................................4

*Mark v. Seattle Times*,
  96 Wash. 2d 473, 635 P.2d 1081 (1981) (en banc)......................................17

*Maximum Hum. Performance, Inc. v. Dymatize Enters, Inc.*,
  2009 WL 2778104 (D.N.J. Aug. 27, 2009) ..............................................14

*Osborne v. Emp. Benefits Admin. Bd. of Kraft Heinz*,
  2020 WL 1808270 (W.D. Pa. Apr. 9, 2020)...............................................14

*Palagano v. NVIDIA Corp.*,
  2015 WL 5025469 (E.D. Pa. Aug. 19, 2015) ........................................11, 14, 15

*Panitch v. Quaker Oats Co.*,
 2017 WL 1333285 (E.D. Pa. Apr. 5, 2017) ....................................................................11, 15

*Piper Aircraft Co. v. Reyno*,
 454 U.S. 235 (1981)..........................................................................................................12

*Popa v. Zillow*,
 Case No. 22-cv-01696 (W.D. Wash., filed Sept. 8, 2022)............................................ passim

*QVC, Inc. v. Patiomats.com, LLC*,
 2012 WL 3155471 (E.D. Pa. Aug. 3, 2012) .....................................................................15

*Sacco v. Mouseflow, Inc.*,
 2022 WL 4663361 (E.D. Cal. Sept. 30, 2022).....................................................................8

*Saleh v. Nike, Inc.*,
 562 F. Supp. 3d 503 (C.D. Cal. 2021) ................................................................................8

*Shire U.S., Inc. v. Johnson Matthey, Inc.*,
 543 F. Supp. 2d 404 (E.D. Pa. 2008) ...................................................................13, 15, 16

*Sinclair Cattle Co. v. Ward*,
 80 F. Supp. 3d 553 (M.D. Pa. 2015) ................................................................................14

*Strelzin v. Zillow*,
 Case No. 22-cv-01695 (W.D. Wash., filed Sept. 15, 2022)..................................................3

*Synthes, Inc. v. Knapp*,
 978 F. Supp. 2d 450 (E.D. Pa. 2013) ...............................................................................14

*Tagouma v. Investigative Consultant Servs., Inc.*,
 4 A.3d 170 (Pa. Super. Ct. 2010).....................................................................................17

*Tatum v. Nat'l Football League*,
 2014 WL 1652794 (W.D. Pa. Apr. 24, 2014).....................................................................13

*Thompson v. Glob. Mktg. Rsch. Servs., Inc.*,
 2016 WL 233702 (E.D. Pa. Jan. 20, 2016) .........................................................................2

*Thompson v. Glob. Mktg. Rsch. Servs., Inc.*,
 2016 WL 233702 (E.D. Pa. Jan. 20, 2016) .......................................................................15

*Thompson v. Nat'l Football League*,
 2014 WL 1646929 (W.D. Pa. Apr. 24, 2014)...............................................................13, 16

*Travelers Indem. Co. v. E.F. Corp.*,
 1997 WL 135819 (E.D. Pa. Mar. 17, 1997)........................................................................9

*Universal Atl. Sys., Inc. v. Honeywell Int'l, Inc.*,
   2018 WL 1757727 (E.D. Pa. Apr. 12, 2018) ............................................................6

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ..................................................................................................6

*Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*,
   2009 WL 1845236 (E.D. Pa. June 26, 2009) ........................................................1, 9

*Wagner v. Olympus Am., Inc.*,
   2016 WL 3000880 (E.D. Pa. May 25, 2016) ............................................................6

*Zokaites v. Land-Cellular Corp.*,
   424 F. Supp. 2d 824 (W.D. Pa. 2006) ....................................................................14

**STATUTES**

18 Pa. Cons. Stat. § 5701, *et. seq.*
   Wiretapping and Electronic Surveillance Control Act ................................... passim

28 U.S.C. § 1391 ..............................................................................................................7

28 U.S.C. § 1404(a) ................................................................................................ passim

9.73 RCW
   Washington Privacy Act .........................................................................................17

**OTHER AUTHORITIES**

Administrative Office of the US Courts, Table N/A-U.S. District Courts-
   Combined Civil and Criminal Federal Court Management Statistics, 1 (June
   30, 2022),
   https://www.uscourts.gov/statistics/table/na/federal-court-management-
   statistics/2022/06/30-2 ...........................................................................................11

Restatement (Second) of Torts § 652B (1977) ..............................................................17

## INTRODUCTION

This case is one of eight class actions that Ms. Popa, her counsel, and other plaintiffs have filed across the country alleging state wiretap and privacy violations based on the Microsoft Clarity session replay service running on websites that Ms. Popa and these other plaintiffs allege they visited. Ms. Popa and her counsel have voluntarily transferred to and/or are currently pursuing three of these eight related class actions, including one that names Microsoft as a defendant (*Perkins v. Zillow*), in the Western District of Washington, where these cases will soon be consolidated. What's more, Ms. Popa's counsel filed *Perkins v. Zillow*, which alleges a class definition that overlaps with the one alleged here, in the Western District of Washington *before* counsel filed this case in this Court. The Western District of Washington is therefore the district at the very center of these cases and the district in which this overlapping and related putative case should also proceed. As a result, Microsoft respectfully requests that the Court transfer this matter to the Western District of Washington under Section 1404(a) and/or the first-filed rule for the following reasons:

*First*, the Court should transfer this case under Section 1404(a) to the Western District of Washington because this case could have been filed there and transfer would be in the interests of justice and for the convenience of the parties. In particular, transfer would allow this case to be consolidated with the related actions, avoiding duplicative litigation, reducing the risk of inconsistent results, and preserving party and judicial resources. Courts in this circuit consistently agree "the presence of a related action in the transferee forum," as exists here, is a "powerful reason to grant a transfer." *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, 2009 WL 1845236, at *5 (E.D. Pa. 2009).

*Second*, the Court should transfer this case to the Western District of Washington under the first-filed rule because *Perkins v. Zillow*, filed by Ms. Popa's counsel ten days before this action, involves substantially the same parties and virtually identical issues. Again, transfer under the first-filed rule would avoid duplicative efforts, unnecessary expenses, and inconsistent

results.[1] *See, e.g.*, *Thompson v. Glob. Mktg. Rsch. Servs., Inc.*, No. CV 15-3576, 2016 WL 233702, at *3 (E.D. Pa. Jan. 20, 2016) (applying first-filed rule where putative classes in two cases consisted of similarly situated individuals alleging the same misconduct by defendant).

## BACKGROUND

### I.   Ms. Popa and her attorneys are litigating several related actions in the Western District of Washington involving Microsoft's Clarity software.

Ms. Popa alleges that Microsoft's Clarity software was running on the Pet Supplies Plus website when she visited that website. She claims the Clarity software is a "session replay" software that "captures a user's interactions with a website, logging every website user's mouse movements and clicks, scrolling window resizing, user inputs, and more." Dkt. 1 ("Compl.") ¶¶ 3, 49. Based on those bare allegations, Ms. Popa alleges that both Pet Supplies Plus and Microsoft violated the Pennsylvania Wiretapping and Stored Communications Act (the "Wiretap Act"), 18 Pa. Cons. Stat. § 5701, *et seq*., and are liable for intrusion upon seclusion. *See generally* Compl. In addition to this case there are eight related actions involving Microsoft's Clarity software, including three actions filed by Ms. Popa, her attorneys, or both, all of which are pending in the Western District of Washington, where plaintiffs filed them or agreed to transfer them under Section 1404(a) and which will soon be consolidated (the "Related Actions"). *See* Declaration of Nicola Menaldo ("Menaldo Decl.") ¶ 4, Ex. 1 (attached as **Exhibit A**); *see also* App'x. 1 to this Motion (table with more information about the eight Related Actions). The class proposed in this case includes members of the putative class in *Perkins v. Zillow*, which is one of those actions and which Ms. Popa's counsel filed before filing this one. *Compare* Compl. ¶ 73, *with* Menaldo Decl., ¶ 5, Ex. 2 ¶ 69 (*Perkins v. Zillow* complaint).

As a threshold matter, Ms. Popa herself stipulated to transferring another action involving Microsoft Clarity, *Popa v. Zillow*, Case No. 22-cv-01696 (W.D. Wash., filed Sept. 8, 2022), from this district to the Western District of Washington, where it is now pending. *See* Menaldo

---

[1] Consistent with the Court's order, *see* Dkt. 18, Microsoft limits this motion to its request for transfer.

Decl. ¶ 6, Ex. 3 (attaching stipulation); *id*. ¶ 7, Ex. 4 (attaching complaint). Ms. Popa filed the *Popa v. Zillow* action just two weeks before this case and, as in this case, alleges Pennsylvania Wiretap Act and privacy claims based on Microsoft Clarity software running on a website (the Zillow website) she claims she visited. *Id.*, Ex. 4 ¶¶ 44-55. In stipulating to transfer the *Popa v. Zillow* case out of this Court, Ms. Popa agreed to consolidate the action with the other seven related actions involving the same alleged Microsoft session replay service in the Western District of Washington. *See id.* ¶ 6, Ex. 3.

In addition, Ms. Popa's counsel, Lynch Carpenter LLP, stipulated to transfer a second wiretap and privacy class action based on the Microsoft Clarity session replay service to the Western District of Washington: *Strelzin v. Zillow*, Case No. 22-cv-01695 (W.D. Wash., filed Sept. 15, 2022); *see* Menaldo Decl., ¶ 8, Ex. 5 (attaching complaint). Before that transfer, Lynch Carpenter had already filed yet another wiretap and privacy class action in the Western District of Washington, *Perkins v. Zillow*, which alleges wiretap and privacy class action claims against both Zillow and Microsoft, again based on the Microsoft Clarity session replay service allegedly running on the Zillow website when the plaintiff allegedly visited the website. *See* Menaldo Decl., ¶ 5, Ex. 2 (attaching complaint). And yet, Ms. Popa and her counsel will not consent to transfer this case. *See id*. ¶ 5.

Not only does the *Perkins v. Zillow* case that Lynch Carpenter filed in the Western District of Washington base the same claims on the same Microsoft service, but also it alleges a putative class that overlaps with the putative class Ms. Popa and Lynch Carpenter allege here. In *Perkins v. Zillow*, the plaintiffs seek to represent a class of:

> All natural persons in the United States and its territories whose Website Communications were captured through the use of Session Replay Code embedded in Zillow's website.

Menaldo Decl., ¶ 5, Ex. 2 ¶ 69. Meanwhile, the broad "Microsoft class" that Ms. Popa seeks to represent in this action includes:

> All natural persons in Pennsylvania whose Website Communications emanating from Pennsylvania were captured through the use of Microsoft Clarity.

Compl. ¶ 73. On the face of the complaints, then, the *Perkins* class and the Microsoft class here overlap. *See id.*

Along with the Lynch Carpenter actions, five more wiretap and privacy class actions with different plaintiffs and different law firms involving Microsoft Clarity are also pending in the Western District of Washington. *See generally* Menaldo Decl., ¶ 4, Ex. 1; *see also* App'x 1.[2] Those five actions also base state wiretap and privacy claims on Microsoft Clarity allegedly running on websites the various plaintiffs allegedly visited. *See id.* And in each of those actions, the plaintiffs and their counsel agreed to transfer the actions to the Western District of Washington for consolidation. One of those matters, *Huber v. Zillow*, was even transferred from Pennsylvania and, like this action and the *Popa v. Zillow* action, asserts Pennsylvania Wiretap Act claims. *See* Menaldo Decl., ¶ 9, Ex. 6 ¶¶ 74–87 (attaching *Huber* complaint).

Microsoft, Zillow, and the plaintiffs in the Related Actions (including Ms. Popa and her counsel) have agreed to consolidate the eight wiretap and privacy cases involving Microsoft Clarity that are now all pending in the Western District of Washington. *See* Menaldo Decl., ¶ 4, Ex. 1 (stipulation anticipating single, consolidated complaint).

**II. Ms. Popa's claims in this action relate to the Microsoft Clarity software.**

In her complaint here, Ms. Popa alleges she visited a single website, www.petsuppliesplus.com, which she alleges was using the Microsoft Clarity session replay code when she visited it. Compl. ¶¶ 59–60. Ms. Popa alleges Clarity can "capture[] a user's interactions with a website, logging every website user's mouse movements and clicks, scrolling window resizing, user inputs, and more" to later "be translated into a simulation video of how a

---

[2] The five additional Related Actions are: *Huber v. Zillow*, Case No. 22-cv-01699-JHC (W.D. Wash., filed Sept. 7, 2022); *Margulis v. Zillow*, Case No. 2:22-cv-01736 (W.D. Wash., filed Sept. 7, 2022); *Kauffman v. Zillow*, Case No. 22-cv-01694-JLR (W.D. Wash., filed Sept. 15, 2022); *Conlisk v. Zillow*, Case No. 22-0cv-01698-JCC (W.D. Wash., filed Sept. 19, 2022); and *Adams v. Zillow*, Case No. 2:22-cv-01737 (W.D. Wash., filed Sept. 27, 2022).

user interacts with a website" and to be used to evaluate and improve user engagement. *Id.*
¶¶ 49–51. Ms. Popa provides zero details about her supposed visit to www.petsuppliesplus.com,
pleading only that she visited the site "on her computer while in Pennsylvania." *Id*. ¶ 59.
Although she alleges that users who visit the website can browse and purchase "pet-related
products . . . such as dog beds, cat toys, fish food, and the like," *id*. ¶ 44, she does not allege that
*she* browsed the website, put any items in her shopping cart, or filled out any webforms. *See id.*
¶ 59 (alleging only that she visited the website). She does not even say when she allegedly
visited the website. *Id.*

Nevertheless, Ms. Popa sued both Pet Supplies Plus and Microsoft based on her alleged
visit to www.petsuppliesplus.com, asserting two causes of action against each.

She alleges two claims against Microsoft and Pet Supplies Plus under the Wiretap Act.
The Wiretap Act is a criminal statute passed in 1978 to prevent "surreptitious recording of
[private] conversation[s]." *Commonwealth v. Smith*, 2016 Pa. Super. 43, 136 A.3d 170, 174
(2016). Ms. Popa alleges violations of the Act's prohibitions related to the alleged "interception"
of communications. 18 Pa. Cons. Stat. §§ 5703 (1)–(3), 5725(a)(1)–(3). In doing so, she admits
that "interception" means the "[a]ural or other acquisition of the **contents** of any wire, electronic
or oral communication through the use of any electronic, mechanical or other **device**." Compl.
¶ 86 (emphasis added) (quoting 18 Pa. Cons. Stat. § 5702). Implausibly, Ms. Popa asserts that
the Clarity software is a "device," *id*. ¶ 91, and she claims it was used to intercept her
(unspecified) "Website Communications" with www.petsuppliesplus.com, *id.* ¶ 92, "including
[any] mouse movements, clicks, keystrokes [and/or], URLs of web pages visited," *id.* ¶ 3. Ms.
Popa and her counsel's complaint here, similar to those in the related cases pending in the
Western District of Washington (including ones they are pursuing there), seeks to recover
damages on these alleged facts.

Ms. Popa also alleges two claims against Microsoft and Pet Supplies Plus for common
law invasion of privacy in the form of intrusion upon seclusion. She asserts that she had an
objectively reasonable expectation of privacy in her unspecified website activities, that Microsoft

and Pet Supplies Plus intentionally intruded upon her seclusion without consent, and that this "conduct is highly objectionable to a reasonable person and constitutes an egregious breach of [] social norms." Compl. ¶¶ 119–21.

## ARGUMENT

### I.   The Court should transfer this case to the United States District Court for the Western District of Washington under Section 1404(a).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The primary goal of transfer under Section 1404(a) is "to prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation omitted); *Jacobowitz v. Range Res. Corp.*, No. 2:21-cv-00301-RJC, 2021 WL 2457545, at *3 (W.D. Pa., June 16, 2021) (quoting *Van Dusen* and stating the same); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (citing interest of "easy, expeditious and inexpensive" resolution). A court is not limited to the pleadings when adjudicating a motion to transfer under Section 1404(a). *See, e.g.*, *Universal Atl. Sys., Inc. v. Honeywell Int'l, Inc.*, No. 17-4660, 2018 WL 1757727, at *2 (E.D. Pa. Apr. 12, 2018).

Transferring this case will satisfy these goals. As a threshold matter, "all parties" do not consent to the transfer, necessitating this motion, because while Pet Supplies Plus does not oppose transfer, Ms. Popa's counsel have represented she does. *See* Menaldo Decl. ¶ 3. This is so even though Ms. Popa and her counsel transferred and are pursuing other wiretap and privacy claims based on Microsoft Clarity allegedly running on Zillow's website in that district. *See* App'x 1. Courts within this Circuit, however, agree the lack of all-party consent is not dispositive where, as here, the other factors support transfer. *See, e.g.*, *Wagner v. Olympus Am., Inc.*, No. 15-6246, 2016 WL 3000880, at *5 (E.D. Pa. May 25, 2016) (granting defendant's transfer motion when a co-defendant "[did] not oppose the Motion, even though such a transfer would likely be more inconvenient"); *Bolton v. Tesoro Petroleum Corp.*, 549 F. Supp. 1312,

1313 n.1 (E.D. Pa. 1982) (granting defendant's transfer motion when a co-defendant did not oppose). The Court should grant Microsoft's motion to transfer because this action could have been brought in that district and transfer will advance the goals of Section 1404(a).

### A.  Ms. Popa could have filed this action in the Western District of Washington.

First, this Court may transfer this case to the Western District of Washington because it "might have been brought" there in the first instance. 28 U.S.C. § 1404(a). This is so because "a substantial part of the events or omissions giving rise to the claim" occurred in that district, where, as Ms. Popa admits, Microsoft is both incorporated and headquartered. 28 U.S.C. § 1391(b)(2) (federal venue provision); *see also Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Of Tex.*, 571 U.S. 49, 56 (2013) (instructing courts considering transfer to look to federal venue provision when considering where a case might have been brought); Compl. ¶ 11 (alleging Microsoft is headquartered in Redmond, Washington, and incorporated under the laws of Washington). Ms. Popa's central contention is that Microsoft's Clarity software is a "device" that recorded the "content" of her communications with Pet Supplies Plus in violation of state wiretapping laws and in a matter that intrudes upon her seclusion. *See, e.g.,* Compl. ¶¶ 91–95. Therefore, a substantial part of the events at issue in the Complaint center around Microsoft's development and deployment of Clarity, which primarily occurred in Washington. *See* Declaration of Florin Mirica ("Mirica Decl.") ¶ 4 (attached as **Exhibit B**) (explaining the Microsoft Clarity team members are primarily in Washington, where Microsoft's business records are also located).

Ms. Popa also could have sued in the Western District of Washington because it is a "judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3). Specifically, the Western District of Washington is the judicial district with unquestioned personal jurisdiction over Microsoft, where, again, Ms. Popa admits Microsoft is incorporated and headquartered. *See* Compl. ¶ 11 (alleging same); *Daimler AG v. Bauman*, 571 U.S. 117 (2014) (holding there is general jurisdiction over a corporation both where it is incorporated and where it has its principal place of business).

-7-

Conversely, this district lacks personal jurisdiction over Microsoft because none of the actions described in the Complaint establishes that Microsoft "expressly aimed" its conduct at the state of Pennsylvania. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998) (noting "expressly aimed" conduct requires "specific activity" in the forum and knowledge that the plaintiff will "suffer the brunt of the harm" in the forum state); *see also Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 513 (C.D. Cal. 2021) (no personal jurisdiction over out-of-state session replay provider where there were no allegations of suit-related contacts in the forum); *Sacco v. Mouseflow, Inc.*, No. 20-cv-02330, 2022 WL 4663361, at *4 (E.D. Cal. Sept. 30, 2022) (same).[3]

Because Ms. Popa could have filed this action in the Western District of Washington, this case satisfies the first transfer requirement under 28 U.S.C. § 1404(a).

**B. The balance of private and public factors weighs in favor of transferring Ms. Popa's claims to the Western District of Washington.**

Second, transferring this action to the Western District of Washington will serve the interests of justice and the convenience of the parties by aiding in the "easy, expeditious and inexpensive" resolution of this case. *Gulf Oil Corp.*, 330 U.S. at 508. A district court considering transfer "must consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Although "there is no definitive formula or list of the factors to consider," *id.*, courts in the Third Circuit commonly consider the following twelve private and public factors:

> (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) 'convenience of the parties as indicated by their relative physical and financial conditions'; (5) 'the convenience of the witnesses–but only to the extent that the witnesses may actually be unavailable for trial in one of the

---

[3] Pet Supplies Plus does not oppose transfer. *See* Menaldo Decl. ¶ 3. But even if that were otherwise, or if the Court were disinclined to transfer the claims against Pet Supplies Plus for another reason, the Court should still transfer the claims against Microsoft by severing them from the remaining claims against Pet Supplies Plus. *See, e.g.*, *Foster v. Maiorana*, No. 3:CV-14-1368, 2014 WL 6633365, at *5 (M.D. Pa. Nov. 21, 2014) (severing and transferring claims against some defendants).

fora'; (6) the location of books and records; (7) the enforceability of the judgment; (8) practical considerations that could expedite or simplify trial; (9) the level of court congestion in the two fora; (10) 'the local interest in deciding local controversies at home'; (11) the public policies of the fora; and (12) in a diversity case, the familiarity of the two courts with state law.

*Id*. at 879–80.  Here, these factors strongly support transfer.

### 1. The *Jumara* public interest factors support transfer.

All of the public interest factors (factors 7 through 12) support transfer to the Western District of Washington. For instance, "practical considerations that could expedite or simplify trial" (factor 8) weigh heavily in favor of transfer since the eight Related Actions—including actions Ms. Popa and her counsel brought—are already pending in the Western District of Washington. "[T]he pendency of a related or similar case in another forum is a powerful reason to grant a motion for a change of venue." *Eagle View Techs., Inc. v. GAF Materials, LLC*, 594 F. Supp. 3d 613, 623 (D.N.J. 2022) This is because "a transfer allows for pretrial discovery to be conducted more efficiently, saves witnesses' time and money, both with respect to pretrial and trial proceedings, avoids duplicative litigation, thereby eliminating unnecessary expense to the parties, and at the same time serves the public interest and avoids inconsistent results." *Id.* (transferring patent case brought by the same plaintiff asserting the same patent against another defendant); *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, C.A. No. 09-2552, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009) (recognizing that "the presence of a related action in the transferee forum" is powerful enough to override "other *Jumara* factors, such as the convenience of parties and witnesses"); *see also Travelers Indem. Co. v. E.F. Corp.*, Civ. A. No. 95-5660, 1997 WL 135819, at *8 (E.D. Pa. Mar. 17, 1997) (collecting cases). Here, there is not only one similar action, but *eight* of them, including ones Ms. Popa and her counsel either filed in or agreed to transfer to that district, all of which militates strongly in favor of transferring this case to the same forum.

Indeed, the eight Related Actions in Washington each implicate the same issues central to this action: whether state wiretapping or privacy laws were violated when a plaintiff visited a website that allegedly had Microsoft Clarity running on the site at the time of the visit. *See*

Menaldo Decl. ¶ 4, Ex. 1 (stipulation anticipating single, consolidated complaint in *Perkins v. Zillow*). In fact, if this action is transferred to the Western District of Washington, it may well be consolidated with the eight Related Actions. *Id*. Transfer will allow for consolidated motions practice, discovery, and all other pre-trial proceedings, saving party and judicial resources by requiring fewer responsive pleadings, discovery requests, motions, and depositions, and by avoiding duplicate document productions.

Transferring this action to Washington will also prevent or reduce the risk of conflicting results. The putative class alleged here overlaps with the putative class alleged in *Perkins v. Zillow*, but the two actions seek to apply different states' laws to the same alleged conduct. *See* Menaldo Decl., ¶ 5, Ex. 2 ¶ 3 (alleging causes of action under Washington law in *Perkins v. Zillow* Complaint); Menaldo Decl., ¶ 7, Ex. 4 ¶ 7 (alleging causes of action under Pennsylvania law in *Popa v. Zillow* complaint). If both actions proceed before different judges in different fora, the two courts could reach different conclusions as to which law applies to the overlapping putative class members' claims, which could engender additional motions practice and further inefficiency. For example, the Western District of Washington could rule in *Perkins v. Zillow* that the plaintiff there may seek to apply Washington law to a nationwide class, including putative class members in Pennsylvania, while this Court could rule that Pennsylvania law applies to those same putative class members—i.e., to putative class members who accessed websites with Clarity running on them from within Pennsylvania.

And while some of the Related Actions involve the laws of different states (Washington and Illinois), two of them involve Pennsylvania's laws—as here. Specifically, both *Popa v. Zillow* and *Huber v. Zillow* allege violations of Pennsylvania's Wiretap Act, just as this action does. Therefore, the Western District of Washington will *already* need to consider whether Pennsylvania law was violated when Ms. Popa and others allegedly visited a website that allegedly had Clarity running on it at the time of the visit.

In addition, transferring this action to the Western District of Washington will introduce few new issues given that the Related Cases also involve Clarity and claims of wiretap and

privacy violations, including claims under Pennsylvania law. *See* Menaldo Decl., Ex. 1 ¶ 7 (stipulation anticipating single, consolidated complaint in *Perkins v. Zillow*). And while this case involves the Pet Supplies Plus website and the Related Cases involve the Zillow website, this difference is outweighed by the many similarities among the cases.

Analysis of the remaining *Jumara* public interest factors confirms that transfer will be in the interest of justice. As to factor 7, any judgment in the Western District of Washington will be enforceable against Microsoft because that court unquestionably has personal jurisdiction over Microsoft (unlike this Court).

As to factor 9, the relative congestion of the courts, the Western District of Washington has capacity to handle this case. The average total actions per judgeship among United States District Courts was 570 over the twelve months preceding June 2022. *See* Administrative Office of the US Courts, Table N/A—U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics, 1 (June 30, 2022).[4] Over the same time period, the average total actions per judgeship in the Western District of Washington was 447. *Id*. at 76. That court also had a quicker median time from filing to disposition in civil matters as compared to the national average (7.9 months versus the national average of 10.8), and fewer pending cases per judgeship than the national average (418 versus the national average of 1,058). *Id*. at 1, 76. Since 2021, four new judges have been appointed to the Western District of Washington.

The tenth factor considers the local interest in deciding local controversies at home. While both Microsoft and Ms. Popa have chosen their home fora, here, because Ms. Popa and other plaintiffs have filed other actions against or involving Microsoft in the Western District of Washington, this factor leans in Microsoft's favor.  *See Palagano v. NVIDIA Corp.*, No. 15-1248, 2015 WL 5025469, at *7 (E.D. Pa. Aug. 19, 2015) (recognizing a defendant's location is more relevant than a plaintiff's if various plaintiffs have filed multiple actions nationwide based on the same conduct); *Panitch v. Quaker Oats Co.*, No. 16-4586, 2017 WL 1333285, at *8 (E.D.

---

[4] Available at https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2022/06/30-2.

Pa. Apr. 5, 2017) (same). Additionally, as other courts have recognized in transferring similar cases out of Pennsylvania, there is no risk of Pennsylvania's public policies being circumvented by transfer (factor 11). *See, e.g.*, *Kwok Sze v. Fui-Ling Pang*, No. 12-cv-00619, 2015 WL 224692, at *12 (M.D. Pa. Jan. 15, 2015) (transferring action brought under Pennsylvania Wiretap Act to the Southern District of New York without finding any circumvention of Pennsylvania public policy). This is so because as Ms. Popa herself acknowledges by voluntarily transferring *Popa v. Zillow* to the Western District of Washington, that district is fully capable of applying Pennsylvania law to these issues (factor 12).

> **2. The *Jumara* private interest factors support transfer.**

The *Jumara* private factors (factors 1 through 6) also favor transfer here. The plaintiff's choice of forum is the sole private factor against transfer, but this factor does not deserve "dispositive weight." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.23 (1981); *see also Doe v. Ritz Carlton Hotel Co.*, 666 F. App'x 180, 183 (3d Cir. 2016) (quoting *Piper*). That is especially the case where, as here, Ms. Popa seeks to represent a class encompassed by the putative nationwide class in the *Perkins v. Zillow* complaint that her counsel filed against Microsoft in the Western District of Washington. *See Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs … all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened"). And a "district court is accorded substantial flexibility in evaluating a forum non conveniens motion, with each case turning on its facts." *Ritz Carlton*, 666 F. App'x at 183 (quoting *Delta Air Lines, Inc. v. Chimet*, S.p.A., 619 F.3d 288, 294 (3d Cir. 2010)) (cleaned up). Plus, Ms. Popa consented to venue in Washington in the related *Popa v. Zillow* case, further diminishing the impact of this factor upon the analysis.

Factor 2—Microsoft's choice of forum—favors Washington, because that is not only where the eight Related Actions are pending, where Microsoft is incorporated and headquartered, and where the Clarity team is largely located, but also because Pet Supplies Plus does not oppose

Microsoft's choice of forum. Factor 3—where the claim arose—does not tilt the balance to either side: although Ms. Popa alleges she visited the Pet Supplies Plus website from within Pennsylvania, again, she admits Microsoft is headquartered in Washington and bases her claims on the allegation that the Microsoft Clarity session replay service was running on the Pet Supplies Plus website when she visited it. Thus, the conduct on which Ms. Popa bases her claims emanated from Washington (or Delaware and/or Michigan, where Pet Supplies Plus is incorporated and located, respectively), not Pennsylvania, even if Ms. Popa acted from within Pennsylvania. *See* Mirica Decl. ¶ 4. Finally, the convenience of the parties and witnesses, and the location of relevant documents (factors 4, 5, and 6) all weigh in favor of transfer because Microsoft is headquartered in Washington and the majority of the Clarity team works there. *See id*.

On balance, then, the public and private factors strongly favor transfer to the Western District of Washington under Section 1404(a). *See, e.g.*, *Thompson v. Nat'l Football League*, C.A. No. 13-CV-00367, 2014 WL 1646929, at *5 (W.D. Pa. Apr. 24, 2014) (transferring case related to corpus of cases to the District of Minnesota under Section 1404(a)); *Tatum v. Nat'l Football League*, C.A. No. 13-CV-01814, 2014 WL 1652794, at *7 (W.D. Pa. Apr. 24, 2014) (same).

## II.  The Court should transfer this case to the Western District of Washington under the first-filed rule.

This Court should also transfer this action to the Western District of Washington under the first-filed rule because Ms. Popa's counsel filed the *Perkins v. Zillow* class action there before filing this one, and the two cases satisfy the first-filed test. Where substantially similar cases are filed in different federal district courts, the first-filed rule permits the court hearing the later-filed action to "stay, enjoin, or transfer" its case while the other proceeds. *Keating Fibre Int'l, Inc. v. Weyerhaeuser Co.*, 416 F. Supp. 2d 1048, 1051 (E.D. Pa. 2006). The rule "promote[s] comity among courts and wise expenditure of judicial resources, as well as fairness and consistency of results, by avoiding duplicative concurrent action." *Shire U.S., Inc. v.*

*Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 407 (E.D. Pa. 2008). Application of the rule is the norm, not the exception, as courts "must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule." *EEOC v. Univ. of Pennsylvania*, 850 F.2d 969, 971, 979 (3d Cir.); *see also Zokaites v. Land-Cellular Corp.*, 424 F. Supp. 2d 824, 838 (W.D. Pa. 2006) ("The rule is presumptively applicable in cases of concurrent federal jurisdiction.").

The first-filed "rule's application is not cabined to proceedings involving identical parties and identical issues, but also extends to cases where there is a substantial overlap of the subject matter." *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 457 (E.D. Pa. 2013); *see also L. Sch. Admission Council, Inc. v. Tatro*, 153 F. Supp. 3d 714, 724 (E.D. Pa. 2015) ("[W]here there is a "substantial overlap" of subject matter, the first-filed rule is properly applied."); *Maximum Hum. Performance, Inc. v. Dymatize Enters, Inc.*, No. 09-235, 2009 WL 2778104, at *3 (D.N.J. Aug. 27, 2009) ("For the first-to-file rule to apply, there must be a substantial overlap between the two actions, but the issues and parties involved need not be identical.") (cleaned up).

For example, a court in this district recently applied the substantial overlap test to transfer a class action and shareholder derivative action based on a substantially similar, but not identical, prior filed case. *See Osborne v. Emp. Benefits Admin. Bd. of Kraft Heinz*, No. 19-CV-00307, 2020 WL 1808270, at *13 (W.D. Pa. Apr. 9, 2020). The Court held that "a flexible analysis of the first-filed rule directs district courts to consider whether or not 'the subject matter of the later filed case substantially overlaps with that of the earlier one'—not the parties or the legal claims for relief." *Id*. (citing *Emps.' Ret. Sys. of City of St. Petersburg, Fla. v. Teva Pharm. Indus. Ltd.*, No. 19-2711, 2019 WL 5485549, at *3 (E.D. Pa. Oct. 8, 2019)).[5] In this way, the substantial

---

[5] Respectfully, the minority view, that the first-filed rule applies only where the cases are truly identical, is based on an erroneous interpretation of dicta in a footnote in a 2007 Third Circuit decision. *See, e.g.*, *Tatro*, 153 F. Supp. at 723 (concluding that relevant "pronouncements are dicta" in *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 333 n.6 (3d Cir. 2007)); *Palagano*, 2015 WL 5025469, *2–3*; *Sinclair Cattle Co. v. Ward*, 80 F. Supp. 3d 553, 558–59 (M.D. Pa. 2015); *Synthes*, 978 F. Supp. 2d at 456.

overlap rule allows courts to "exercise their discretion to promote efficiency and comity," *Palagano*, 2015 WL 5025469, at *2, and to "fully meet the purposes of the first-filed rule," *Tatro*, 153 F. Supp. 3d at 723.

Here, the Court should apply the first-filed rule to transfer this action to the Western District of Washington to join *Perkins v. Zillow*, which Ms. Popa's counsel filed against Zillow and Microsoft ten days before filing this action. *See* Menaldo Decl., ¶ 5, Ex. 2 (*Perkins v. Zillow* complaint, filed Sept. 12, 2022). Both actions involve substantially the same parties, and most importantly, both actions involve substantially the same issues.

### A.  Both actions involve substantially the same parties.

In both *Perkins v. Zillow* and this case, Microsoft is named as a defendant because plaintiffs allege in both cases that the Microsoft Clarity session replay service was running on the Zillow and Pet Supplies Plus websites when plaintiffs allegedly visited those websites. Accordingly, one party (Microsoft) is *identical* in both actions. The second defendant in both actions is a Microsoft customer alleged to have used the same Microsoft service; therefore, while Pet Supplies Plus and Zillow are not identical, they are similarly situated to one another. Both actions thus involve substantially the same defendants. *See, e.g.*, *Thompson v. Glob. Mktg. Rsch. Servs., Inc.*, No. CV 15-3576, 2016 WL 233702, at *3 (E.D. Pa. Jan. 20, 2016) (quoting *Shire U.S.*, 543 F. Supp. 2d at 408 & n.22 (collecting cases); *Mahmoud v. Rite Aid Corp.*, No. 11-6363, 2012 WL 3560645, at *5 (D.N.J. Aug. 16, 2012) (applying first-filed rule when two cases shared one common defendant, but each case also included defendants not named in the other); *QVC, Inc. v. Patiomats.com, LLC*, No. 12-3168, 2012 WL 3155471, at *3 (E.D. Pa. Aug. 3, 2012) (transferring even though the plaintiff was not a party to the lawsuit pending in the transferee forum).

These cases also involve substantially the same plaintiffs. In putative class actions, the proposed *classes* are compared for similarities, not just the named plaintiffs. *See, e.g.*, *Panitch*, 2017 WL 1333285, at *4 (collecting cases holding that the first-filed rule considers the putative classes when assessing similarity of plaintiffs and stating "in a class action, the classes, and not

the class representatives, are compared"). And courts do not require perfect overlap between the putative classes.

For example, the first-filed rule has been applied where the proposed classes were definitionally *exclusive of each other*—i.e., where one was solely on behalf of Pennsylvania residents and the other expressly excluded Pennsylvania residents—because both putative classes involved similarly situated individuals who allegedly received calls from the defendant in violation of the federal Telephone Consumer Privacy Act. *See Thompson*, 2016 WL 233702, at *3. Here, the putative classes in both this case and *Perkins v. Zillow* consist of individuals who allege they visited websites on which the Microsoft Clarity session replay service was allegedly running. This case therefore presents an even stronger case for transfer than in *Thompson*, because while there the classes were exclusive, here they are indisputably overlapping, with the nationwide putative class alleged here encompassing members of the nationwide putative class alleged in *Perkins v. Zillow*. *Compare* Compl. ¶ 73 (defining putative class in this case as "[a]ll natural persons in Pennsylvania whose Website Communications emanating from Pennsylvania were captured through the use of Microsoft Clarity."), *with* Menaldo Decl., ¶ 5, Ex. 2 ¶ 69 (defining putative class in *Perkins* as "[a]ll natural persons in the United States and its territories whose Website Communications were captured through the use of Session Replay Code embedded in Zillow's website"). The plaintiffs in both this action and in *Perkins* are thus substantially the same for first-filed rule purposes.

**B.  Both actions involve substantially the same issues.**

Both this case and *Perkins v. Zillow* also involve substantially the same issues: namely, whether a website and Microsoft violate state wiretapping or invasion of privacy laws when the Microsoft Clarity session replay service is running on a website when an individual visits that website.

The first-filed rule does not require the causes of action to be identical; rather, it requires the actions to relate to the same issues. *See Shire U.S.*, 543 F. Supp. 2d at 409 (recognizing that the rule "accomplishes its core purpose" of efficiency when "other, earlier-filed action regard[s]

-16-

the exact same question"). Thus, it does not matter that this case alleges violations of Pennsylvania wiretapping and privacy laws, while *Popa v. Zillow* alleges violations of Washington wiretapping and privacy laws. In both cases, plaintiffs must prove that Microsoft Clarity software is a "device" that was used to "intercept" the "contents" of private "communications" with defendant's website without her consent. *See* 18 Pa. Cons. Stat. §§ 5703 (1)–(3), 5725(a)(1)–(3)); *id.* § 5702 (requiring "[a]ural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device."); RCW 9.73.030 (making it unlawful "to intercept . . . private communication . . . by any device . . . without first obtaining the consent of all the participants in the communication").

Likewise, both states' common law intrusion upon seclusion privacy torts require plaintiffs to prove purposeful and highly offensive intrusion. *See, e.g.*, *Tagouma v. Investigative Consultant Servs., Inc.*, 4 A.3d 170, 174 (Pa. Super. Ct. 2010) (plaintiff must prove defendant (1) intentionally intruded; (2) into plaintiff's solitude, seclusion, or private affairs; (3) in a manner that would be highly offensive to a reasonable person); *Mark v. Seattle Times*, 96 Wash. 2d 473, 497, 635 P.2d 1081 (1981) (en banc) (to prevail on a Washington common law intrusion upon seclusion claim, a plaintiff must prove that the defendant (1) intentionally intruded; (2) into the plaintiff's solitude, seclusion, or private affairs; (3) in a manner that would be highly offensive to a reasonable person); *see also* Restatement (Second) of Torts § 652B (1977) (cited by both courts). The issues are thus substantially the same for first-filed rule purposes.

Indeed, courts have applied the first-filed rule in many cases involving less analogous causes of action but where there were shared issues. A district court applied the first-filed rule to a class action and a collective action that each involved claims under different, but related, statutes: the federal Fair Labor Standards Act ("FLSA") and the New York Labor Law in the first action, and FLSA as well as the New Jersey Wage Payment Act and the New Jersey Wage and Hour Law in the second action. *See Mahmoud*, 2012 WL 3560645, at *4. In so doing, the court concluded that while the statutes differed, the "core allegation" in both actions was whether the plaintiffs were misclassified as an "exempt" employee and thus entitled to overtime pay. In

particular, the court explained, the "causes of action in question deal with the same issues, and [the first-filed rule] does not necessarily require that the statutes themselves be identical." *Id*.

So too, here. The claims in this case and in *Perkins v. Zillow* emanate from the same alleged conduct: the so-called interception of "Website Communications" through Microsoft's session replay software. Indeed, it is especially unsurprising that common issues exist here, where the two complaints "both were drafted by the same attorney and use identical language through much of the two filings." *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 477 (6th Cir. 2019) (applying the first-filed rule although one suit had additional causes of actions); *compare, e.g.*, Compl. ¶¶ 17–43, 46–58, *with* Menaldo Decl. ¶ 5, Ex. 2 ¶¶ 14–40, 49–55 (reciting pages of identical factual allegations in *Perkins v. Zillow* complaint).

Thus, as in *Mahmoud* and *Hayman*, this case and *Perkins* satisfy the first-filed rule because they involve substantially the issues: whether a website and Microsoft violate state wiretap and privacy laws when a user visits a website on which Clarity was allegedly running at the time of the visit.

## CONCLUSION

For the foregoing reasons, Microsoft respectfully requests that the Court transfer this case to the Western District of Washington under Section 1404(a) and/or the first-filed rule. The Court should transfer this case under Section 1404(a) because it could have been filed in the Western District of Washington, and the balance of public and private factors favors transfer there under Section 1404(a), as the eight Related Actions are pending and subject to consolidation there. Additionally, the Court should transfer this case under the first-filed rule because Ms. Popa's counsel filed *Perkins v. Zillow*, a similar action, in the Western District of Washington ten days before filing this action here.

Dated: January 13, 2023

**MONTGOMERY McCRACKEN
WALKER & RHOADS LLP**

*/s/ John G. Papianou*
John G. Papianou, Pa. I.D. No. 88149
Charles B. Casper, *pro hac vice forthcoming*
1735 Market Street
Philadelphia, PA 19103
Phone: 215-772-1500
Fax: 215-772-7620
jpapianou@mmwr.com
ccasper@mmwr.com

**PERKINS COIE LLP**

James G. Snell, *pro hac vice forthcoming*
3150 Porter Drive
Palo Alto, CA  94304-1212
Tel: 650-838-4300
Fax: 650-838-4350
JSnell@perkinscoie.com

Nicola C. Menaldo, *pro hac vice*
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206-359-8000
Fax: 206-359-9000
NMenaldo@perkinscoie.com

*Counsel for Microsoft Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed and served by CM/ECF on January 13, 2023, on all counsel or parties of record on the service list.


Dated: January 13, 2023                    */s/ John G. Papianou*
                                           John G. Papianou

                                           *Counsel for Microsoft Corporation*

**APPENDIX 1**

| Case Name & Number | Current Jurisdiction | Date filed | Plaintiff's Counsel | Jurisdiction Originally Filed | Applicable Law |
|---|---|---|---|---|---|
| *Popa v. Zillow* 22-cv-1696 | W.D. Wash. | Sept. 8, 2022 | Lynch Carpenter | E.D. Pa. | PA |
| *Perkins v. Zillow* 22-cv-1282-JLR | W.D. Wash. | Sept. 12, 2022 | Lynch Carpenter | W.D. Wash. | WA |
| *Strelzin v. Zillow* 22-cv-01695-MLP | W.D. Wash. | Sept. 15, 2022 | Lynch Carpenter | Ill. Super. | PA |
| *Popa v. PSP* (This action) 22-cv-1357 | E.D. Pa. | Sept. 22, 2022 | Lynch Carpenter | W.D. Pa. | PA |
| *Huber v. Zillow* 22-cv-01699-JHC | W.D. Wash. | Sept. 7, 2022 | Other | E.D. Pa. | PA |
| *Margulis v. Zillow* 22-cv-01736-JLR | W.D. Wash. | Sept. 8, 2022 | Other | N.D. Ill. | IL |
| *Kauffman v. Zillow* 22-cv-01694-JLR | W.D. Wash. | Sept. 15, 2022 | Other | S.D. Cal. | CA |
| *Conlisk v. Zillow* 22-cv-01698-JCC | W.D. Wash. | Sept. 19, 2022 | Other | N.D. Ill | IL |
| *Adams v. Zillow* 22-cv-01737-JLR | W.D. Wash. | Sept. 27, 2022 | Other | E.D. Mo. | MO |